IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------X
: 
In re: : Chapter 11
: 
BOOMERANG SYSTEMS, INC., et al.,[1] : Case No. 15-11729 (MFW)
: 
Debtors. : (Jointly Administered)
: 
----------------------------------------------------------------X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING FIRST AMENDMENT TO DEBTOR-IN-POSSESSION LOAN AGREEMENT AND (II) AMENDING ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING

Boomerang Systems, Inc. ("Boomerang Systems"), Boomerang Sub, Inc., Boomerang USA Corp. and Boomerang MP Holdings Inc., the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or "Boomerang")[1] hereby move this Court for entry of an order (i) approving the first amendment (the "First Amendment") to the Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement") among the Debtors and Game Over Technology Investors, LLC, as agent (the "DIP Agent") for itself and other lenders (collectively the "DIP Lenders") and (ii) amending the *Final Order (I) Authorizing the Debtor to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105 and 364 Pursuant to a Post-Petition Credit Agreement and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 507* (the "Final DIP Order") [Docket No. 200]. In support of this motion (the "Motion"), the Debtors respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address for each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New Jersey 07932.

3966194.2

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 361, 362, 363, 364 and 507 of the Bankruptcy Code.

## BACKGROUND

4. On August 18, 2015 (the "Petition Date"), each of the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of James V. Gelly (the "Gelly Declaration") [Dkt. No. 13], which is deemed fully incorporated herein by reference.

5. The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 2, 2015, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). On September 14, 2015, two creditors filed a motion to convert the cases to cases under chapter 7, or in the alternative, to appoint a chapter 11 trustee in the cases. The conversion/trustee motion has since been withdrawn.

6. On the Petition Date, the Debtors filed their motion seeking entry of an order approving the Debtors' DIP Credit Agreement with various lenders, including Game Over Technologies, Inc., as agent (the "DIP Agent") [Docket No. 9] (the "DIP Motion").

7. On August 21, 2015, the Court entered an order granting the DIP Motion on an interim basis [Docket No. 48] (the "Interim DIP Order") and authorizing the Debtors to borrow up to $1 million on an interim basis.

8. On October 2, 2015, after a contested hearing, the Court entered a final order granting the DIP Motion [Docket No. 200] (the "Final DIP Order") and authorizing the Debtors to borrow and additional $2 million for a total DIP Loan of $3 million on a final basis. To date, $1 million of the DIP Loan has been funded. At the time of the entry of the Final DIP Order it was the parties' expectation that the Debtors would pursue the negotiation and confirmation of a plan of reorganization and exit Chapter 11 as a reorganized and restructured company.

9. After the final DIP hearing, the Debtors and the DIP Lenders attempted to negotiate a final form of credit agreement. These negotiations were extensive and there were significant differences of opinion as to certain provisions contained in the agreement and over the terms and viability of the Debtors' business plan and the budget necessary to implement such plan. Ultimately, it became apparent that significant litigation might arise between the parties. As advised to the Court on November 19, 2015, the Debtors were unable to finalize and execute the DIP Credit Agreement with the DIP Lenders. Afterwards, while keeping the Creditors' Committee's professionals apprised of all events, the Debtors and the DIP Lenders agreed that the Debtors should pursue an orderly liquidation of its assets

through a chapter 11 liquidation plan. Unfortunately, these negotiations were also extensive and there were concerns expressed over the funding of a liquidation of the Debtors as the DIP Loan when originally it was the parties' intention to reorganize the Debtors.

10. On December 4, 2015, the DIP Agent reached an understanding with James Gelly, Chief Executive Officer of the Debtors, and Mark Patterson, the President and Chairman of the Board of the Debtors, that officers of the Debtors and members of the board of directors that are qualified investors could participate as DIP Participants in the aggregate amount of $200,000 of the $750,000 in funding necessary to conduct a section 363 sale of the Debtors and to confirm a chapter 11 liquidating plan. The DIP Agent will provide the remaining $550,000 of the $750,000 in additional DIP funding under the amended DIP Loan In connection with this amendment, the Debtors, the DIP Agent, and the Creditors' Committee have agreed that the Creditors' Committee's financial advisor will work with the Debtors to market the assets of the Debtors' estates and conduct the necessary and appropriate sales process in an effort to maximize value to the estates. The parties will file a joint chapter 11 plan of liquidation which will incorporate the section 363 sale of the assets and distributions of available proceeds from a liquidation trust.

## RELIEF REQUESTED

11. By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>") approving the First Amendment to the DIP Credit Agreement, the terms of which have been agreed to between the Debtors and the DIP Lender (attached to the Proposed Order as Exhibit 1).

12. Attached hereto as <u>Exhibit B</u> is the First Amendment to the DIP Credit Agreement (the "<u>First Amendment</u>") which sets forth the amendments to the DIP Credit Agreement. It is contemplated that upon approval of this Motion to Amend, the Debtors and the DIP Lender would execute the original DIP Credit Agreement and the First Amendment to the DIP Credit Agreement concurrently so that the various amendments to the DIP Credit Agreement would take effect immediately, reflecting the parties efforts to move forward towards a plan of liquidation.

13. The changes contemplated by the First Amendment to the DIP Credit Agreement include the following:[2]

a. Section 2.1 of the Credit Agreement shall be amended in its entirety to read as follows:

**Commitment.** Subject to the terms and conditions of this Agreement, the Borrowers shall be entitled to request additional Loans (each a "Draw") up to an aggregate amount of $750,000, with $250,000 to be funded upon execution of this Amendment after approval by the Court and the remaining $500,000 to be funded into to an Escrow Account (defined in Section 2.4 below) to be disbursed upon confirmation of the Liquidating Plan (as defined in Section __ hereof), as set forth in the Budget attached hereto as Exhibit A. Amounts under this Section 2.1 repaid or prepaid may not be reborrowed.

b. Section 2.3.1(c) of the Credit Agreement shall be amended in its entirety to read as follows: Each Borrowing Request shall be for a maximum amount as set forth in the Budget.

c. Section 2.3.1(b) and 2.3.1(d) of the Credit Agreement shall be deleted in their entirety.

d. Section 2.4 of the Credit Agreement shall be amended in its entirety to read as follows:

**Initial Funding and Escrow.** On the date hereof, the Lenders shall fund the Initial Draw as contemplated by Section 2.3.2 of the Credit Agreement. The remainder of the

---

[2] Capitalized terms used but not defined in the Motion shall have the meanings assigned to them in the First Amendment.

Commitment ($500,000) shall be funded into an escrow account established at a mutually agreed upon financial institution pursuant to the escrow agreement attached hereto as Exhibit B (the "Escrow Account").

e. **Releases**. The following new Section 2.3.3 of the Credit Agreement shall be added:

**Releases.** The obligation of the Lender to fund (i) the initial Draw shall be conditioned upon provision by the Borrowers, and confirmation by the Bankruptcy Court, of a release substantially in the form of the release provided for in Section 15 of the Final DIP Order; and ii) the final Draw shall be conditioned upon provision by the Borrowers, at the time of each Borrowing Request, of a general release in the form attached as Exhibit C hereto.

f. **Funding Conditions**.

(i) The first sentence of Section 5.1 of the Credit Agreement shall be revised to read as follows:

The obligation of the Lender to fund the initial Draw shall be conditioned on satisfaction of the following conditions precedent in a manner satisfactory to the Lender (the "Funding Conditions"):

The following sections of Article 5 of the Credit Agreement shall be deleted in their entirety: Sections 5.1.3, 5.1.4, 5.1.6, 5.1.7 and 5.1.8, 5.2.1, and 5.2.2.

g. Section 5.2.3 and 5.2.4 shall be deleted in their entirety and replaced by the following:

**Approval of Disclosure Statement.** Within 50 days of entry of the First Amended DIP Order, the Company shall have received an order of the Court approving a disclosure statement in connection with the Plan contemplated hereunder.

**Confirmation of Plan.** Within 100 days after the entry of the First Amended DIP Order, the Company shall have received an Order confirming the Plan.

h. The following new sections shall be added to the end of Section 5.1 of the Credit Agreement:

**Investment by Senior Management.** Certain officers and directors of the Borrowers, including Mark Patterson and James Gelly shall, prior to the date hereof, have individually invested an aggregate of $200,000 as Participants under the Loan Participation Agreement dated as of August 17, 2015. $66,667.00 of such amount shall be funded to the Borrowers as part of the initial Draw, with the remainder funded into the Escrow contemplated by Section 1.d above.

**Plan Support Agreement**. Borrowers and Lender shall enter into a plan support agreement with the Creditors Committee providing for carve outs only for Free and Clear Assets, and requiring that Lender use its reasonable best efforts to cause the assignment by Participants of their senior secured claims under the Existing Credit Agreement to the Creditors Committee.

**Communication**. Borrowers shall grant written permission, in the form attached [to the Amendment], for Lender and its advisors to communicate directly with the replacement software supplier, Borrowers' customers and employees, and Borrowers' other consultants.

i.  **Representations and Warranties**. Sections 6.5, 6.6, 6.14, and 6.25 of the Credit Agreement shall be deleted in their entirety.

j.  **Affirmative Covenants**. Sections 7.1.1(b), 7.1.1(c), 7.1.1(d), 7.1.1(h) and 7.1.12 of the Credit Agreement shall be deleted in their entirety.

k.  The following new Sections shall be added to the end of Section 7.1 of the Credit Agreement:

    (i)    **Budget**. Monthly, the Borrowers shall submit to Lender an updated Budget showing disbursements and other relevant changes in form and substance reasonably satisfactory to Lender.

    (ii)    **Reporting**. Monthly, the Borrowers shall submit to Lender an accounting of its financial position as of the three-month period preceding any Borrowing Request Date, specifically addressing any departures from the Budget.

    (iii)    **Key Employees**. The Borrowers shall retain a sufficient number of employees (in particular, each of Mark Patterson, James Gelly, Rod Kirby and Ryan Campbell) to enable them to continue to preserve the value of the Collateral, to perform their obligations with respect to proposed Section 363 sale, and to maintain sufficient know-how with respect to the Borrowers' intellectual property to avoid a loss in value of such intellectual property.

    (iv)    **Section 363 Sale**. The Borrowers shall commence a sale of substantially all of its intellectual property assets, its physical assets, and any and all litigation and other claims with respect to Borrowers' intellectual property or its current or past relationships with customers or suppliers, provided that such claims shall not include any Free and Clear Assets, no later than January 31, 2016. In this regard, Borrowers shall retain Gavin Solomonese to assist in the marketing and sales efforts with respect to the 363 Sale in an effort to maximize value to the Estates.

l.  **Negative Covenants**. Section 7.2.5 of the Credit Agreement shall be deleted in its entirety.

m. **Lender Fees.** The following sentence shall be added to the end of Section 3.3.3 of the Credit Agreement:

Lender shall be expressly entitled to pay the reasonable fees and expenses of its professionals (attorneys, consultants, etc.) incurred in connection with the Chapter 11 Cases by recording any such payment as an additional Draw (in excess of the $750,000 set forth above), regardless of whether the Funding Conditions or the Performance Milestones have been met, and without respect to the maximum amount of the Commitment, it being understood that such reasonable fees and expenses shall not exceed the amount contemplated in the original DIP budget.

n. **Events of Default.** A new Section 9.1.18 shall be added to the end of Section 9.1 of the Credit Agreement:

o. **Litigation.** Any litigation or proceeding is (i) threatened or commenced directly or indirectly by or on behalf of, or relating to, Borrowers (or any of them) or any of their affiliates against any of the DIP Agent, the DIP Lender, the DIP Participants, or any of their respective current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, accountants, or predecessors in interests, or (ii) commenced against the Borrowers and the DIP Agent, the DIP Lender or the DIP Participants by any third party and such litigation is not stayed or dismissed within twenty days of such suit being initiated.

p. **Credit Bid.** Lender shall be expressly entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any public sale, to use and apply all the Obligations (including any amounts paid by Lender directly to its professionals (attorneys, consultants, etc.) as a credit on account of the purchase price for any Collateral payable by Lender at such sale, whether sold in one of more lots.

q. **Access to Information/Due Diligence.** Lender shall be entitled to engage in due diligence activities, including assessment of customer relationships, technology partnerships and employment relationships, and to engage in discussions with customers, potential technology partners, and employees or prospective employees, as it deems necessary or advisable, and Borrowers hereby waives and releases Lender (and its affiliates, etc.) from any and all claims in respect of such activities, whether undertaken before or after the date hereof. Borrowers shall cooperate fully with Lender's due diligence activities and assist where necessary by providing access to all information, documentation and personnel required by Lenders in order to conduct the same. In addition, Borrowers will provide equal and timely due diligence opportunities to qualified interested third-parties brought to the sales process by Gavin Solomonese or the Debtors upon execution of appropriate non-disclosure agreements.

14.     The proposed amendment is necessary to fund an orderly liquidation of the Debtors' estates while maintaining the value of the estates' assets in an effort to maximize returns to the various creditor constituencies in these cases. The terms of this amendment have been negotiated between the Debtors and the DIP Agent with the Creditors' Committee's professionals being kept apprised of the negotiations. The Debtors and DIP Agent expect that the Creditors' Committee will support the relief requested herein. Without the funding obtained via the First Amendment, the Debtors would convert these cases and the value of the Debtors' assets would be lost forever. By having the Creditors' Committee's financial advisor conduct an orderly liquidation and auction of the Debtors' patent portfolio and related assets with all knowledge relating to the Debtors' technologies intact, including the continuing employment of Messrs. Gelly and Patterson, the value of the Debtors' assets will be maximized for all parties in interest. A goal of every chapter 11 case is a consensual plan of reorganization. The Debtors believe that the consensual amendment to the DIP Loan will help begin the process of a confirmable liquidation plan and the maximization of value for all parties in interest. As a result, the Debtors submit that entry of the order approving the First Amendment should be entered by this Court.

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court enter an order in the form attached hereto as Exhibit A and award such other and further relief as may be just and proper.

Dated: December 7, 2015

                                      CIARDI, CIARDI & ASTIN

                                      */s/ Joseph J. McMahon, Jr.*
                                      Daniel K. Astin (No. 4819)
                                      John D. McLaughlin, Jr. (No. 4123)
                                      Joseph J. McMahon, Jr. (No. 4819)
                                      1204 N. King Street
                                      Wilmington, DE 19801
                                      Tel: (302) 658-1100
                                      Fax: (302) 658-1300
                                      jmcmahon@ciardilaw.com

                                      - and –

                                      SULLIVAN & WORCESTER LLP
                                      Jeffrey R. Gleit (admitted *pro hac vice*)
                                      1633 Broadway
                                      New York, NY 10019
                                      Tel: (212) 660-3000
                                      Fax: (212) 660-3001

                                      Counsel for the Debtors and
                                      Debtors in Possession