## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOOMERANG SYSTEMS, INC., et al., | Case No. 15-11729 (MFW) |
| Debtors.[1] | Jointly Administered<br>**Objection Deadline (Bid Procedures)**<br>**January 27, 2016 at 12:00 p.m.**<br>**Hearing Date (Bid Procedures)**<br>**January 28, 2016 at 11:30 a.m.** |

**JOINT MOTION OF THE DEBTORS AND THE COMMITTEE TO: (I)(A) APPROVE PROCEDURES IN CONNECTION WITH SALE OF DEBTORS' ASSETS; (B) APPROVE FORM OF ASSET PURCHASE AGREEMENT; (C) SCHEDULE AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (D) APPROVE PROCEDURES RELATED TO ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVE FORM AND MANNER OF NOTICE THEREOF; AND (II)(A) AUTHORIZE SALE OF SUCH ASSETS PURSUANT TO ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (B) APPROVE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANT RELATED RELIEF**

The official committee of unsecured creditors (the "Committee"), along with Boomerang Systems, Inc. ("Boomerang Systems"), Boomerang Sub, Inc., Boomerang USA Corp., Boomerang MP Holdings Inc., the debtor in possession in the above-captioned case (the "Debtors" or "Boomerang," and collectively with the Committee, the "Joint Movants"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a)(i) approving certain bidding procedures (the "Bidding Procedures") in connection with the Debtors' sale (the "Sale")

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address of each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New

of certain of its assets (as described more fully below) (the "Acquired Assets"); (ii) approving the form of the anticipated asset purchase agreement (the "Asset Purchase Agreement") in connection with the Sale, by and between the Debtors and Game Over Technologies, Inc. (the "Purchaser");[2] (iii) scheduling an auction (the "Auction") in connection with, and hearing (the "Sale Hearing") to consider approval of, the Sale; (iv) approving certain procedures (the "Cure Procedures") related to the assumption of certain executory contracts and unexpired leases; (v) approving the form and manner of notice with respect to the foregoing; and (vi) granting certain related relief; and (b)(i) authorizing the Sale free and clear of any and all liens, claims, encumbrances and other interests to the Purchaser or the party otherwise submitting the highest and best offer at the Auction (the "Successful Bidder"); (ii) approving the assumption and assignment of the executory contracts and unexpired leases (collectively, the "Assumed Contracts") related thereto; and (iii) granting certain relief in connection therewith.  In support of this Motion, the Joint Movants respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, along with Bankruptcy Rules 6004 and 6006.

---

Jersey 07932.
[2] The parties are currently negotiating the terms of an Asset Purchase Agreement.  In the event that an Agreement cannot be finalized, the Joint Movants will move forward with the Sale process contemplated herein without the participation of a stalking horse bidder.

## BACKGROUND

4.      On August 18, 2015 (the "Petition Date"), the Debtors commenced voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      By the Amended Notice of Appointment of Committee of Unsecured Creditors dated September 3, 2015, the Office of the United States Trustee for the District of Delaware (the "OUST") appointed the Committee, consisting of the following three members:  (i) HERE Lawrence Property Owner, LLC; (ii) AV Excellence, LLC; and (iii) Xaplos, Inc.  On September 8, 2015, the Committee selected A. M. Saccullo Legal, LLC as its proposed counsel and Gavin/Solmonese as its proposed financial advisor.  On November 18, 2015, the OUST filed a Second Amended Notice Appointment of Creditors' Committee, with the following three members: (i) AV Excellence, LLC; (ii) Xaplos, Inc.; and (iii) Quay Consulting.

6.      On October 2, 2015, after a contested hearing, this Court entered a final order granting the Debtors the ability to obtain an additional $2 million in Debtor In Possession Financing [Docket No. 200] (the "Final DIP Order").  The Final DIP Order was the subject of lengthy and extensive negotiations between GOTI, the Debtors and the Committee.  At the time of the entry of the Final DIP Order it was the parties' expectation that the Debtors would pursue the negotiation and confirmation of a plan of reorganization and exit chapter 11 as a reorganized and restructured company.

7.      After this Court's approval of the Final DIP Order, the Debtors and GOTI attempted to negotiate the form of final credit agreement.  These negotiations were extensive, and there were significant differences of opinion as to certain provisions contained in the

agreement and over the terms and viability of the Debtors' business plan and the budget necessary to implement such a plan.  Ultimately, it became apparent that significant litigation might arise between the parties.  As the Debtors apprised this Court on November 19, 2015, the Debtors were unable to finalize and execute the DIP Credit Agreement with GOTI, and ultimately, the Debtors determined that a liquidation of their assets and a chapter 11 plan of liquidation was the best option available to maximize value to all parties in interest in these cases.

8.      Faced with an inability to reorganize, the Debtors sought to negotiate funding from GOTI—and concomitant reduction in professional fees—to ensure that these estates were administratively solvent through the liquidation process.  Ultimately, these negotiations were also extensive, and there were significant differences of opinion with regard to the funding needed to support a liquidation.  These negotiations were unsuccessful, and it appeared that sufficient funding to support an orderly liquidation and chapter 11 plan process would not be forthcoming.

9.      On December 4, 2015, GOTI reached an understanding with certain of the Debtors' insiders—including their Chief Executive Officer and Chairman—pursuant to which the insiders would provide $200,000 of the requisite $750,000 in DIP funding needed to support a liquidating plan process pursuant to the professional fee concessions negotiated by the Debtors' counsel.

10.     On December 21, 2015, this Court approved a First Amendment to the DIP Loan Agreement that provides for the funding of $750,000 (in installments) by GOTI with the participation of certain of the Debtors' insiders.  As a result of the participation in the DIP Financing by the Debtors' insiders, the Debtors, GOTI, and the Committee have agreed that the

Committee and its professionals will conduct the marketing and sale process for the Debtors' assets. Messrs. Patterson and Gelly, along with two other knowledgeable employees, will remain with the Debtors throughout the sale and plan confirmation process, and assist the Committee and its professionals in the marketing and sale process. The Committee and its professionals will be vested—through the Order approving the Bid Procedures contemplated in this Motion—with the authority to control the sale process, including the determination of: (i) which bids and bidders are qualified to participate in the auction process; (ii) which bid is used to commence the auction process; and (iii) which bid is the highest and best offer to be submitted to the Court for approval. The Committee will consult with the Debtors and their professionals in making these determinations.

11.     It is contemplated by all parties that this Motion will be filed in conjunction with a Joint Chapter 11 Plan of Liquidation (the "Proposed Plan") proposed by the Debtors and the Committee, and that the Proposed Plan will create a liquidating trust to handle the liquidation of remaining assets, the litigation of claims, and the distribution to unsecured creditors. The Proposed Plan will also memorialize an agreed-upon settlement with the Debtors' prepetition alleged secured lenders that provides for an allocation of the sale proceeds, and the proceeds from the liquidation of other assets (including litigation claims), that will provide for the possibility of a distribution to unsecured creditors in these cases.

12.     The Committee, the Purchaser, and the Debtors are negotiating the terms of an Asset Purchase Agreement that will be filed as soon as the terms are agreed-upon by all parties. In the event that an Asset Purchase Agreement cannot be finalized, the Joint Movants reserve the right to move forward with the sale process without a stalking horse bid. In the event that an Asset Purchase Agreement is finalized, the Joint Movants will provide this Court and all parties

in interest with the disclosures required by Local Rule 6004-1(b)(iv).  For the avoidance of

doubt, the currently anticipated Purchaser is GOTI, through a credit bid, with the participation of

Mssrs. Gelly (the Debtors' Chief Executive Officer and a Director), Patterson (Chairman of the

Board), and Koffman (Director).  Each of these individuals are insiders of the Debtors, and

certain of the original Lenders who provided the interim DIP Financing (as previously disclosed

to the Court) may also be insiders of the Debtors.  The Committee's participation in the Sale

process is contemplated to ameliorate any potential allegations of self dealing in the Sale

process.

## **RELIEF REQUESTED**

13.    By this Motion, the Joint Movants seek entry of an order, pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006:

    a) Approving:

        i) the Bidding Procedures, a copy of which is attached as Exhibit A to the proposed order annexed hereto as Exhibit 1 (the "Bidding Procedures Order");

        ii) the notice of the Auction and Sale Hearing (the "Auction and Sale Notice"), substantially in the form attached as Exhibit B to the Bidding Procedures Order; and

        iii) the notice (the "Assumption and Assignment Notice"), substantially in the form attached as Exhibit C to the Bidding Procedures Order, of the Debtors' proposed assumption and assignment of the Assumed Contracts;

    b) Approving the form of the anticipated Asset Purchase Agreement, if finalized;

    c) Establishing a date that is no later than March 21, 2016 at 4:00 p.m. (Eastern Time) as the deadline for the submission of bids (the "Bid Deadline");

    d) Scheduling the Auction, if necessary, on March 23, 2016 at 10:00 a.m. (Eastern Time);

    e) Scheduling the Sale Hearing for March 25, 2016 at 10:30 a.m. (Eastern Time) to consider the sale of the Acquired Assets to the Purchaser or the Successful Bidder; and

    f) Granting the Purchaser certain protections under the Bankruptcy Code.

14.     The Joint Movants further request that the Court enter an order at the Sale Hearing, which will be submitted to the Court during the sale process (the "Sale Order"):

a)  Approving a sale to the Purchaser pursuant to the Asset Purchase Agreement, or to the Successful Bidder pursuant to a purchase and sale agreement substantially in the form of the Asset Purchase Agreement;

b)  Approving the Asset Purchase Agreement, or a substantially similar asset purchase agreement applicable to the Purchaser or the Successful Bidder; and

c)  authorizing the Debtors:

i)   to sell the Acquired Assets, free and clear of any and all liens, claims, encumbrances and interests (other than certain specified assumed liabilities) and

ii)  to assume and assign to the Purchaser the Assumed Contracts.

**A.    Proposed Notice of the Sale Hearing**

15.     Pursuant to Bankruptcy Rule 2002(a), a debtor is required to provide creditors with twenty (20) days notice of the Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested in the Motion.  The Joint Movants propose that the deadline for objecting to approval of the Sale shall be March 18, 2016 at 4:00 p.m. (Eastern Time) (the "Sale Objection Deadline").

16.     The Joint Movants will serve notice of this Motion on:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors' prepetition and postpetition lenders; (c) the parties included on the Debtors' consolidated list of twenty (20) creditors holding the largest unsecured claims; (d) any party which, to the best of the Debtors' knowledge, information and belief, has, in the past year, expressed in writing to the Debtors an interest in buying its business and which the Joint Movants and its representatives reasonably and in good faith determine (in consultation with the Committee and its professionals) potentially have the financial wherewithal to effectuate the transactions contemplated by the

Motion; (e) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (f) all taxing authorities or recording offices which have a reasonably known interest in relief requested in the Motion; (g) all non-debtor parties to the Assumed Contracts; and (h) all parties requesting notice pursuant to Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (collectively, the "Bidding Procedures Notice Parties").

17.    Additionally, upon entry of the Bidding Procedures Order, the Debtors propose to, not later than three (3) days thereafter, serve notice of the Bidding Procedures Order and the Auction and Sale Hearing, in substantially the form of the Auction and Sale Notice, to the Bidding Procedures Notice Parties.  The Joint Movants further propose (a) to provide electronic notification of the Bidding Procedures Order and the Auction and Sale Hearing to interested parties by filing a copy of the Auction and Sale Notice with the Court.  Given the unique nature of the assets to be sold, the Joint Movants will not publish notice of the Sale.  Rather, the Joint Movants reserve the right to utilize, in the Committee's discretion, one or more email distribution lists from trade publications or associations who are involved in the Debtors' industry.  In light of the specific utility of the Debtors' assets, and the limited funding available for this Sale process, this notice is reasonably intended to maximize the value received from the Sale process.

18.    The Joint Movants submit that the foregoing notice procedures satisfy Bankruptcy Rule 2002 and Local Rule 2002-1(b) and provide adequate and sufficient notice of the Sale and related deadlines, including, without limitation, the Bid Deadline and Sale Objection Deadline.

B.    **Proposed Cure Procedures**

19.    Additionally, as part of the Sale, the Joint Movants may assume and assign to the Purchaser certain Assumed Contracts.  As soon as practicable, but no later than five (5) days after entry of the Bidding Procedures Order, the Debtors will file and serve the Assumption and Assignment Notice, which notice will include a schedule of cure obligations (the "Cure Schedule") for the Assumed Contracts.  The Cure Schedule will include a description of each Assumed Contract to be assigned to the Purchaser pursuant to the anticipated Asset Purchase Agreement, and the amount (the "Cure Cost"), if any, the Debtors believe is necessary to cure each such agreement pursuant to section 365 of the Bankruptcy Code.  A copy of the Assumption and Assignment Notice, together with the Cure Schedule, will be served on each of the non-debtor parties to the Assumed Contracts on the date that the Assumption and Assignment Notice is filed with the Court.

20.    The Joint Movants propose that any objections by the non-debtor parties to the Assumed Contracts, including, but not limited to, objections relating to adequate assurance of future performance, or to the Cure Costs set forth on the Cure Schedule, must be in writing, filed with the Court and be actually received on or before March 18, 2016 at 4:00 p.m. (Eastern Time) by the following parties: (i) undersigned counsel for each of the Joint Movants (ii) counsel to the Proposed Purchaser; and (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

21.    However, in the event that the Auction results in a Successful Bidder other than the Purchaser, the Debtors shall file a notice identifying such Successful Bidder, and serve such notice upon each non-debtor party to the Assumed Contracts, and the deadline for objecting to the assignment of any Assumed Contracts to such Successful Bidder on the basis of adequate

assurance of future performance will be the commencement of the Sale Hearing. Any such objection shall set forth a specific default in any Assumed Contracts and claim a specific monetary amount that differs from the Cure Cost, if any, specified in the Assumption and Assignment Notice and the Cure Schedule provided therein.

22.     If no objections are received thereto, the Cure Cost set forth in the Cure Schedule will be binding upon the non-debtor parties to Assumed Contracts for any and all purposes in this chapter 11 case, and will constitute a final determination of the total Cure Costs required to be paid in connection with the Debtors' assumption and assignment of any Assumed Contracts. Additionally, all non-debtor parties to the Assumed Contracts will be: (a) forever barred from asserting any additional cure or other amounts with respect to the Assumed Contracts, and the Debtors and the Successful Bidder will be entitled to rely solely upon the Cure Costs set forth in the Assumption and Assignment Notice and the Cure Schedule included therein; (b) deemed to have consented to the Debtors' assumption and assignment of any Assumed Contracts; and (c) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (i) that any additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtors or the Successful Bidder or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contracts.

23.     In the event a non-debtor party to an Assumed Contract files an objection asserting a cure amount under section 365 of the Bankruptcy Code higher than the proposed Cure Cost (a "Cure Objection"), then (a) to the extent that the parties are able to consensually resolve the Cure Objection prior to the Sale Hearing, the Debtors shall promptly provide the Successful Bidder notice and an opportunity to object to such proposed resolution, or (b) to the

extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then

the amount to be paid under section 365 of the Bankruptcy Code with respect to such Cure

Objection will be determined at the Sale Hearing or at such other date and time as may be fixed

by the Court.  All objections to the proposed assumption and assignment of Assumed Contracts

that are not Cure Objections will be heard at the Sale Hearing to the extent the Debtors are

unable to resolve any of these objections in advance of such hearing.

**C.     Proposed Sale to Purchaser**

24.     The Debtors and Purchaser anticipate entering into the Asset Purchase

Agreement, subject to this Court's approval as well as a higher and better offer for the Acquired

Assets.  In the event that the Asset Purchase Agreement cannot be agreed upon prior to the Bid

Procedures Hearing, the Joint Movants will submit a form Asset Purchase Agreement in a form

that is acceptable to the Joint Movants.  All parties will be entitled to submit Bids based upon

this form Asset Purchase Agreement.  Upon submission of the Asset Purchase Agreement, the

Joint Movants will make all disclosures (not otherwise contained herein) required by the Local

Rules.

**BASIS FOR RELIEF REQUESTED**

**A.     The Sale is Within the Sound Business Judgment
        of the Debtors, is Supported by the Committee, and Should be Approved**

25.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor

in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 of the

Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court

to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However,

courts in this Circuit and others have required that the decision to sell assets outside the ordinary

11

course of business be based upon the sound business judgment of the debtor. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

26.    The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtor has obtained a fair and reasonable price, and (d) good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). In this case, the Joint Movants submit that the decision to proceed with the Sale and the Bidding Procedures related thereto is based upon their collective sound business judgment and should be approved.

27.    A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons."  In re *Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement

fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

28.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

29.    The Joint Movants submit that more than ample business justification exists to sell the Acquired Assets to the Purchaser (or the Successful Bidder) pursuant to the Bidding Procedures.  First, the Joint Movants believe that the sale process proposed herein is most likely to achieve the highest and best price for the Acquired Assets.  The Debtors' assets consist primarily of intellectual property and other engineering assets that are only valuable if the Debtors' management is actively involved in the sale process.  Without this involvement, few, if

any, potential purchasers will have the ability to use the Debtors' assets in developing and growing an ongoing business.  The sale contemplated herein will ensure the active involvement and availability of the Debtors' management, all under a process that is conducted by the Committee and its professionals.  The Joint Movants believe that in the specific and unique facts and circumstances of these cases, this process represents the best chances of obtaining the maximum value for the Debtors' assets.

30.    Furthermore, the Debtors do not have sufficient funding to delay the sale process for any significant period of time beyond the timeframe proposed herein, and the Acquired Assets will only decline in value absent a prompt Sale.  As set forth in the Bid Procedures, the Committee's professionals have already begun collaborations with the Debtors to commence the marketing efforts.  These efforts will include attempting to identify and contact all strategic purchasers of the Debtors' assets.  The process will start with a broad dissemination of a "teaser" that is intended to test interest for these assets.  The Committee's professionals will continue to work with the Debtors to facilitate the open and fair exchange of information with any potential purchaser who complies with the Bid Procedures (including the submission of a Non-Disclosure Agreement).  Thus, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtors' estate for the benefit of its stakeholders.

31.    The Auction and Sale Notice, substantially in the form attached as Exhibit B to the Bidding Procedures Order, is designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Acquired Assets.  Also, the Joint Movants will actively market the Acquired Assets as set forth in the Bidding Procedures.  Accordingly, the Sale satisfies the second prong of the *Abbotts Dairies* standard.

32.     Moreover, the Bidding Procedures are designed to maximize the value received for the Acquired Assets.  Under the facts and circumstances of this chapter 11 case, the process proposed herein by the Joint Movants allows for a timely and efficient auction process, while providing bidders and consultants with ample time and information to submit a timely bid.  The Bidding Procedures are designed to ensure that the Acquired Assets will be sold for the highest or otherwise best possible purchase price.  The Joint Movants are subjecting the value of the Acquired Assets to market testing and permitting prospective purchasers to bid on the assets. The Sale will be further subject to a market check through the solicitation of competing bids in a Court-supervised auction process as set forth in the Bidding Procedures.  Therefore, the Debtors and all parties in interest can be assured that the consideration received for the Acquired Assets will be fair and reasonable, and therefore, the third prong of the *Abbotts Dairies* standard is satisfied.  As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied here.

**B.      The Bidding Procedures Are Reasonable and Appropriate**

33.     The Joint Movants submit that under the facts and circumstances surrounding the proposed sale of the Acquired Assets and this chapter 11 case generally, the Bidding Procedures are reasonable and appropriate and necessary to any efforts to preserve and maximize estate value.  The Committee reserves the right to modify such procedures as necessary or as the Committee deems appropriate (after consultation with the Debtors) to maximize the value of the estate.  In addition, the Committee reserves the right to withdraw any or all Acquired Assets from the Sale at any time prior to Court approval of the Sale, subject to any limitations provided for in the Asset Purchase Agreement.

34.     Local Rule 6004-1(b)(iv)(F) provides that "[t]he Sale Motion must highlight

whether the proposed purchaser has submitted, or will be required to submit, a good faith deposit and, if so, the conditions under which such deposit may be forfeited." L.R. Bankr. P. 6004-1(b)(iv)(F). As set forth in the Bid Procedures, GOTI will not be required to submit a good faith deposit; however, any Qualified Bidder (as defined in the Bidding Procedures) wishing to bid for the Acquired Assets must submit a good faith deposit equal to 10% of the cash consideration set forth in the Qualified Bid. The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors in a segregated account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Joint Movants shall be entitled to retain the Good Faith Deposit as part of the damages resulting from the breach or failure to perform by the Successful Bidder.

35.    Local Rules 6004-1 (c) (i)(A) and (B) further provide that a bidding procedures motion such as this must highlight "[a]ny provision governing any entity becoming a qualified bidder" and "[a]ny provision governing a bid being a qualified bid." Id. 6004-1 (c)(i)(A) and (B). The Bidding Procedures, attached as Exhibit A to the Bidding Procedures Order, provide as follows with respect to qualifying bids:[3]

> **Participation Requirements**. To participate in the bidding process or to otherwise be considered for any purpose hereunder, a person interested in all or portions of the Acquired Assets (a "Potential Bidder") must first

---

[3] To the extent any inconsistencies exist between the summary provided in this Motion and the actual terms of the Bidding Procedures, the Bidding Procedures shall control. Capitalized terms used but not otherwise defined in connection with this summary shall have the meanings ascribed to such terms in the Bidding Procedures.

deliver (unless previously delivered) to the Committee, through its counsel, not later than the Qualified Bid Deadline:

- *Confidentiality Agreement*. An executed confidentiality agreement in form and substance acceptable to the Committee, the Debtors and each of their respective counsel;

- *Identification of Potential Bidder* Unless: (i) the Committee, in its sole discretion, agrees to waive this requirement; or (ii) the Potential Bidder is a publicly-traded company, identification of the Potential Bidder and any individuals who are officers, directors, members, shareholders, or otherwise insiders (as defined in section 101(31) of the Bankruptcy Code) (collectively, "Principals"). In the event that the Potential Bidder or any of its Principals is another entity, or is owned, controlled by, or affiliated (as defined by section 101(2) of the Bankruptcy Code) with another entity, the Potential Bidder must disclose every Principal and/or insider of that entity, and such disclosures must be made until all Principals and insiders are disclosed as natural persons (without any entity names). The disclosures set forth herein are ongoing in nature, and the Potential Bidder is required to update the disclosures to reflect any changes. Failure to provide the proper Bidder Identification set forth herein, to the satisfaction of the Committee, in its sole discretion, may disqualify a Potential Bidder from participation in the Auction and sale process;[4] and

**Designation as Qualified Bidder**. A "Qualified Bidder" is a Potential Bidder (or, at the Committee's sole discretion, combination of Potential Bidders whose bids for the assets of the Debtors do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a) and (b) below, and that the Committee in its discretion and with assistance from its advisors determine is reasonably likely to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

a. *Corporate Authority*. Within ten (10) days prior to the Bid Deadline (defined below), written evidence of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written

---

[4] An interested party need not be a Qualified Bidder to access the "Data Room", but must submit the confidentiality agreement and must comply with the identification requirements.

evidence reasonably acceptable to the Committee of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder; and

b. *Proof of Financial Ability to Perform.* Within ten (10) days prior to the Bid Deadline, written evidence that the Committee reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following: (i) the Potential Bidder's current financial statements (audited if they exist); (ii) contact names and numbers for verification of financing sources; (iii) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction (including disclosure of the source of any such financing, as required by the *Identification of Potential Bidder* subsection of the *Participation Requirements* of these Bidding Procedures (unless all financing is being provided by a traditional lending institution, in the Committee's discretion; and (iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Committee demonstrating that such Potential Bidder has the ability to close the contemplated transaction; provided, however, that the Committee shall determine, in its reasonable discretion, in consultation with the Debtors and their advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

c. Upon the receipt from a Potential Bidder of the information required the Bid Procedures, the Committee, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

36.     Local Rule 6004-1(c)(i)(C)(3) requires that a bidding procedures motion such as this Motion must highlight, "[a]ny requirement regarding the amount of the initial overbid and any successive bidding increments." Id. The Bidding Procedures, attached as Exhibit A to the Bidding Procedures Order, provide as follows with respect to the initial overbid and any successive bidding increments:

a     **Minimum Initial Overbid**.  The consideration proposed by the Bid can include only cash.  The aggregate consideration must equal or exceed the sum of the Purchase Price plus $100,000.

b.      **Terms of Overbids**.   An "Overbid" is any bid made at the Auction subsequent to the Joint Movants' announcement of the Baseline Bid.   To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

i.   *Minimum Overbid Increment:*  Any Overbid after the Baseline Bid shall be made in increments of at least $50,000.  Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash; provided, however, notwithstanding the foregoing, any Overbid by the Purchaser may be a credit bid under section 363(k) of the Bankruptcy Code, either in full or in part.  The Committee, in its sole discretion, reserves the right to: (i) accept a Overbid that is less than the Highest and Best Bid plus the Minimum Overbid Increment; and/or (ii) to request the submission of a written "highest and best offer" from all Qualified Bidders, which offer may exceed the highest bid by less than the Minimum Overbid Increment.

ii.   *Remaining Terms are the Same as for Qualified Bids:*  Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply.  Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Joint Movants accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below). To the extent not previously provided (which shall be determined by the Joint Movants), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Joint Movants) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

iii. Announcing Overbids  The Joint Movants shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estate based on, *inter alia*, the Bid Assessment Criteria.

iv. *Consideration of Overbids*  The Committee reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Committee and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Committee with such additional evidence as the Committee in its reasonable business judgment may require, that the Qualified Bidder (other than the Purchaser) has sufficient internal

resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

37.     Local Rule 6004-1(c)(i)(D) requires that a bidding procedures motion such as this must highlight, "[a]ny provision that would authorize a debtor, without further order of the Court, to modify any procedures regarding bidding or conducting an auction." <u>Id</u>.  The Bidding Procedures, attached as Exhibit A to the Bidding Procedures Order, provide as follows with respect to the modification of any procedures regarding bidding or conducting an auction:

> a.     **Additional Procedures**.  The Committee may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion, will promote the goals of the Auction and that is not inconsistent with any of the provisions of the Bidding Procedures Order.  All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the Principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

**C.     The Proposed Notice of the Bidding Procedures is Appropriate**

38.     The Joint Movants believe that they will obtain the maximum recovery for the creditors if the Debtors' assets are sold expeditiously, through a Court-supervised auction and sale process, such as the one provided for herein.  The Committee, with the assistance of its professional advisors, is in the process of actively marketing the Acquired Assets.  In doing so, the Committee, with the assistance of the Debtors, have identified dozens of potential purchasers and/or investors.  Against this backdrop, the Joint Movants believe that the service of the Auction and Sale Notice, as previously described herein, is reasonable and appropriate and satisfies any and all requirements for such notice under the Bankruptcy Code, Bankruptcy Rules and Local Rules.

39.     Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Debtors' assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections.  The Joint Movants respectfully submit that the notice procedures described herein, including, without limitation, the service of the Auction and Sale Notice, satisfy Bankruptcy Rule 2002, and are reasonably calculated to provide timely and adequate notice of the Sale to all parties in interest in this chapter 11 case, as well as to those parties which have expressed an interest, or may express an interest, in bidding on the Acquired Assets.

**D.      The Sale of the Debtors' Assets Free and Clear of Liens
and Other Interests is Authorized by Section 363(f)**

40.     Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims, encumbrances, or interests in such property if:  (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).  Because the Joint Movants expect that they will satisfy, at minimum, the second and fifth of these requirements, if not others as well, approving the Sale free and clear of all adverse interests is warranted.  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered

by section 363(f).  *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325 at *3, 6 (Bankr.

D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White*

*Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

E.    **Assumption and Assignment of Certain**
      **Executory Contracts and Unexpired Leases**

41.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in

possession "subject to the court's approval, may assume or reject any executory contract or

[unexpired] lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court

approval of a debtor's decision to assume or reject an executory contract or unexpired lease is

whether the debtor's reasonable business judgment supports assumption or rejection.  *See, e.g.,*

*In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).   If the debtor's

business judgment has been reasonably exercised, a court should approve the assumption or

rejection of an unexpired lease or executory contract.  *See Group of Institutional Investors v.*

*Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp.*, 872 F.2d 36, 39-40

(3d Cir. 1989).   The business judgment test "requires only that the trustee [or debtor in

possession] demonstrate that [assumption or] rejection of the contract will benefit the estate."

*Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel*

*Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *Stable Mews Assoc.*, 41 B.R. at 596).

Any more exacting scrutiny would slow the administration of a debtor's estate and increase

costs, interfere with the Bankruptcy Code's provision for private control of administration of the

estate, and threaten the court's ability to control a case impartially.  *See Richmond Leasing Co. v.*

*Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).   Moreover, pursuant to section

365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or

provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default.  11 U.S.C. § 365(b)(1).

42.    Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist a trustee in realizing the full value of the debtor's assets).

43.    Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *Accord In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

44.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under title 11.  Section 105(a) provides that

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *See In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a) of the Bankruptcy Code, a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code"); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

45.     The Joint Movants respectfully submit that Cure Procedures are appropriate and reasonably tailored to provide non-debtor parties to the Assumed Contracts with adequate notice of the proposed assumption and assignment of its respective contracts, as well as proposed Cure Costs, if any. Such non-debtor parties to the Assumed Contracts will then be given an opportunity to object to such Cure Costs. The Cure Procedures further provide that, in the event an objection is not resolved, the Court will determine related disputed issues, including any adequate assurance of future performance issues. Accordingly, the Joint Movants submit that implementation of the Cure Procedures is appropriate under the facts and circumstances of this case and the proposed sale.

**F.     The Successful Bidder Should be Afforded All Protections
Under Section 363(m) of the Bankruptcy Code as a Good Faith Purchaser**

46.     The Joint Movants request that the Court find that the Purchaser is entitled to the

benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with

the Sale.

47.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under
> subsection (b) . . . of this section of a sale . . . of property does not
> affect the validity of a sale . . . under such authorization to an
> entity that purchased . . . such property in good faith, whether or
> not such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

48.     Section 363(m) of the Bankruptcy Code protects the purchaser of assets sold

pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the

order allowing the sale is reversed on appeal.  By its terms, section 363(m) of the Bankruptcy

Code applies to sales of interests in tangible assets, such as the Acquired Assets.

49.     The Joint Movants submit, and will present evidence at the Sale Hearing if

necessary that, as set forth above, the anticipated Asset Purchase Agreement was an intensely

negotiated, arms' length transaction, in which the Purchaser acted in good faith.  Indeed, the

Purchaser's identity will be fully disclosed in these proceedings, and the Joint Movants have

fully disclosed and requested the Court's approval of all of the terms and conditions of the Sale.

Accordingly, the Joint Movants request that the Court to find that the Purchaser has purchased

the Acquired Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**G.     Relief Under Bankruptcy Rules 6004(h)
and 6006(d) is Appropriate**

50.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an order "authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."  The Joint Movants request that the Sale Order be effective immediately by providing that the ten (10) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

51.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten-day stay periods, Collier on Bankruptcy suggests that the ten-day stay periods should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

52.    As described above, time is clearly of the essence as the Debtors lack sufficient funding to continue to administer these cases on a prolonged basis.  Since promptly closing the Sale is of critical importance, the Joint Movants hereby request that the Court waive the ten-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**H.    Additional Disclosures Required Pursuant to Local Rule 6004-1**

53.    Local Rule 6004-1 requires that a bidding procedures motion such as this must

26

highlight certain provisions.  To the extent not already disclosed herein, the Joint Movants disclose as follows:  This Motion seeks approval of the sale of substantially all of the Debtors' assets, and pursuant to Local Rule 6004-1(b)(4)(J), the anticipated Asset Purchase Agreement will provide that the Debtors and the Liquidating Trustee, once appointed, will have reasonable access to books and records from and after the Closing Date.

## NOTICE

53.    Notice of this Motion will be provided to:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors' prepetition and postpetition lenders; (c) the parties included on the Debtors' consolidated list of twenty (20) creditors holding the largest unsecured claims; (d) any party which, to the best of the Joint Movants' knowledge, information and belief, has, in the past year, expressed in writing to the Debtors an interest in buying its business and which the Joint Movants and its representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transactions contemplated by the Motion; (e) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (f) all parties to the Assumed Contracts; (g) all taxing authorities, recording offices and government agencies which have a reasonably known interest in the relief requested in the Motion, including the Internal Revenue Service; and (h) all parties requesting notice pursuant to Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Joint Movants submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Joint Movants respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit 1, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated:  January 20, 2016

| HOGAN♦MCDANIEL | A. M. SACCULLO LEGAL, LLC |
|---|---|
| | */s/ Anthony M. Saccullo* |
| | Anthony M. Saccullo (Bar No. 4141) |
| */s/ Garvan F. McDaniel* | Thomas H. Kovach (Bar No. 3964) |
| Garvan F. McDaniel (DE Bar No. 4167) | 27 Crimson King Drive |
| 1311 Delaware Avenue | Bear, Delaware 19701 |
| Wilmington, DE 19806 | (302) 836-8877 |
| Tel:  (302) 656-7540 | (302) 836-8787 (facsimile) |
| Fax: (302) 656-7599 | ams@saccullolegal.com |
| *Local Counsel for the* | Kovach@saccullolegal.com |
| *Debtors and Debtors in Possession* | |
| | *Counsel to the Official Committee of Unsecured Creditors* |
| - and - | |
| | |
| SULLIVAN & WORCESTER LLP | |
| | |
| */s/ Jeffrey R. Gleit* | |
| Jeffrey R. Gleit (admitted *pro hac vice*) | |
| 1633 Broadway | |
| New York, NY   10019 | |
| Tel: 212-660-3043 | |
| Fax: 212-660-3001 | |
| *Counsel for the* | |
| *Debtors and Debtors in Possession* | |