Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:

BOOMERANG SYSTEMS, INC., et al.,

Debtors.[1]

Chapter 11

Case No. 15-11729 (MFW)

Jointly Administered

**ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF
DEBTORS' ASSETS; (B) APPROVING FORM OF ASSET PURCHASE AGREEMENT;
(C) SCHEDULING AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE;
(D) APPROVING PROCEDURES RELATED TO ASSUMPTION OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
(E) APPROVING FORM AND MANNER OF NOTICE THEREOF**

Upon the Motion[2] of the official committee of unsecured creditors (the "Committee"),

along with Boomerang Systems, Inc. ("Boomerang Systems"), Boomerang Sub, Inc., Boomerang

USA Corp., Boomerang MP Holdings Inc., the debtor in possession in the above-captioned case

(the "Debtors" or "Boomerang," and collectively with the Committee, the "Joint Movants"), for

entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code

(the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), (a)(i) approving certain bidding procedures (the "Bidding

Procedures") in connection with the Joint Movants' sale (the "Sale") of certain of the Debtor's

assets (as described more fully below) (the "Acquired Assets"); (ii) (scheduling an auction (the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address of each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New Jersey 07932.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the Bidding Procedures (as defined below), as appropriate.

"Auction") in connection with, and hearing (the "Sale Hearing") to consider approval of, the Sale; (iii) approving certain procedures (the "Cure Procedures") related to the assumption of certain executory contracts and unexpired leases; (iv) approving the form and manner of notice with respect to the foregoing; and (v) granting certain related relief; and having considered any and all responses and objections to the Motion; and the Court having determined that, to the extent set forth herein, the relief requested in the Motion is in the best interest of the Debtor, its estate and creditors and other parties in interest; due and appropriate notice of the Motion and the relief requested therein was provided by the Joint Movants, on the following parties:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors' prepetition and postpetition lenders; (c) the parties included on the Debtors' consolidated list of twenty (20) creditors holding the largest unsecured claims; (d) any party which, to the best of the Debtors' knowledge, information and belief, has, in the past year, expressed in writing to the Debtors an interest in buying the Debtors' business and which the Joint Movants and its representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transactions contemplated by the Motion; (e) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (f) all taxing authorities or recording offices which have a reasonably known interest in relief requested in the Motion; (g) all non-debtor parties to the Assigned Contracts; and (h) all parties requesting notice pursuant to Local Rule 2002-1(b); and the remainder of the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND, CONCLUDED AND DECLARED THAT:[3]

A.       This Court has jurisdiction over this matter and over the property of the Debtors and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

B.       Notice of the hearing on the Motion and proposed entry of this Order has been provided to the Bidding Procedure Notice Parties.  Under the circumstances, and in light of the relief requested in the Motion, requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 4001(c) and (d) and 9014, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, section 102(1) of the Bankruptcy Code, and no further notice of, or hearing on, the Motion or this Order is necessary or required.

C.       The Joint Movants' proposed notices of (i) the Sale, (ii) the Sale Hearing, (iii) the Auction, (iv) the assumption and assignment of the Assumed Contracts and the Cure Procedures related thereto, (v) the Asset Purchase Agreement and the terms contained therein (if any) and (vi) the Bidding Procedures, in substantially the form of the Auction and Sale Notice attached hereto as Exhibit B, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Sale, the Auction, the assumption and assignment of the Assumed Contracts, the Asset Purchase Agreement and the Bidding Procedures to be employed in connection therewith.

D.       The Joint Movants have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bidding Procedures.  The Bidding Procedures are reasonable and appropriate.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of

E.      The entry of this Order is in the best interests of the Debtors, their estates and creditors and other parties in interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1.      The relief requested in the Motion is granted to the extent set forth herein.

2.      As set forth in the Motion and the Bid Procedures, the Committee is hereby authorized and empowered to conduct the Sale process for the Debtors' assets.  The Committee shall be vested with all powers, rights, and authorities that would otherwise be vested in the Debtors to conduct the Sale process and make any determinations necessary to market and sell the Debtors' assets.  To the extent necessary, the Debtors will take all actions and execute all documents necessary to effectuate the marketing process, and ultimately the transfer of assets as directed by the Committee and its professionals.  Third party interested purchasers may reasonably rely upon the authority vested in the Committee and its professionals in this Order, and in the Bid Procedures, in conducting due diligence and preparing and submitting a Bid for the Debtors' assets.  The Committee, through its retained professionals, shall consult with the Debtors and their professionals on all decisions to be made in furtherance of the Sale process approved herein.

3.      All actions required to be taken by the Committee, unless otherwise set forth herein, shall be undertaken by the Committee's professionals.  For the avoidance of doubt, Gavin/Solmonese LLC shall be the investment banker authorized by the Committee, and this Order, to take all necessary actions on behalf of the Committee, as set forth in this Order, the Motion, or the Bid Procedures.  Gavin/Solmonese LLC shall be entitled to seek the advice and involvement of the Debtors, their employees and representatives, the Committee and each of

---

fact when appropriate.  See Fed. R. Bankr. P. 7052.

their retained professionals and attorneys.

4.      The Bidding Procedures attached hereto as Exhibit A are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed sale of the Acquired Assets; *provided, however*, that the terms of any Asset Purchase Agreement shall remain subject to approval by the Court at the Sale Hearing.  The Joint Movants are authorized to take any and all actions necessary to implement the Bidding Procedures.

5.      All responses or objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court are overruled.

6.      A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the following parties:  (i) counsel for each of the Joint Movants and (ii) the Office of the United States Trustee for the District of Delaware, Attn: Hannah McCollum, Esq., 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 not later than 4:00 p.m. (Eastern Time) on or before March 21, 2016 at 4:00 p.m. (Eastern Time) and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

7.      The Committee, in its sole discretion after consulting with the Debtors, shall have the right to reject any and all Bids that it believes do not comply with the Bidding Procedures.

8.      As further described in the Bidding Procedures, if a Qualified Bid other than Purchaser's Bid is timely received, the Auction will be held on March 23, 2016 at 10:00 a.m. (Eastern), and the Joint Movants shall notify, via email, the Bidding Notice Parties and all Qualified Bidders which have submitted a Qualified Bid and expressed their intent to participate in the Auction as to the time and place of the Auction designated by the Joint Movants, and shall refer all Qualified Bidders to the Claims Agent website, where additional information and

important deadlines will be posted once approved by the Bankruptcy Court.

9.      Only Qualified Bidders, the Debtors, the Committee and the Office of the United States Trustee will be provided notice of, and have the right and ability to attend, the Auction.

10.      Not later than three (3) days after entry of this Order, the Joint Movants will cause the Auction and Sale Notice, in substantially the form attached hereto as Exhibit B, to be sent via email, if available, or first-class mail postage prepaid to:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors' prepetition and postpetition lenders; (c) the parties included on the Debtors' consolidated list of twenty (20) creditors holding the largest unsecured claims; (d) any party which, to the best of the Debtors' knowledge, information and belief, has, in the past year, expressed in writing to the Debtors an interest in buying its business and which the Joint Movants and its representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transactions contemplated by the Motion; (e) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (f) all taxing authorities or recording offices which have a reasonably known interest in relief requested in the Motion; (g) all non-debtor parties to the Assumed Contracts; (h) the Debtors' known creditors and interest holders; and (i) all parties requesting notice pursuant to Local Rule 2002-1(b).

11.      In lieu of publication notice of the Sale, the Joint Movants are authorized to utilize electronic mail notifications to distribution lists maintained by one or more relevant and applicable trade associations or publications to provide public notice of the Sale.  Any such email distribution shall contain or refer to: (i) the deadlines for submitting a Bid and objecting to the Sale; (ii) the reasonable information necessary to inform interested parties of the assets being

sold; and (iii) the contact information for the contact person at the retained investment banker who may be contacted for additional information regarding the sale. This notice shall be sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtor.

12.        In addition, to facilitate the sale, assumption and assignment of any Assumed Contracts, the Debtors will serve, via email, if available, or first-class mail postage prepaid the Assumption and Assignment Notice, in substantially the form attached hereto as Exhibit B, not later than five (5) days after the entry of this Order upon each counterparty to the Assumed Contracts and their known counsel, if any.[4]   To the extent that the Purchaser is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Assumed Contracts assumed and assigned as part of an alternative transaction, the Debtors and the Successful Bidder shall provide financial information for the alternative bidder to all non-debtor parties to such Assumed Contracts and their known counsel, if any, immediately following the Auction via facsimile or overnight delivery.

13.        The Debtors will attach to the Assumption and Assignment Notice a schedule of cure obligations (the "Cure Schedule") for the Assumed Contracts. The Cure Schedule shall include a description of each Assumed Contract to be assumed and assigned to the Purchaser pursuant to the Asset Purchase Agreement, and the amount (the "Cure Cost"), if any, the Debtors believe is necessary to cure each such agreement pursuant to section 365 of the Bankruptcy Code. If no Cure Cost is listed in the Cure Schedule, the Debtors believe that there is no Cure Cost for such Assumed Contract. Unless the non-debtor party to an Assumed Contract files an objection (a "Cure  Objection") to its Cure Cost by March 18, 2016 at 4:00 p.m. (Eastern

Time) (or in the event the Purchaser is not the Successful Bidder, at or prior to the Sale Hearing), and at the same time serves the Cure Objection upon all of the Bidding Notice Parties, such non-debtor party to the Assumed Contract shall be:  (a) forever barred from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder will be entitled to rely solely upon the Cure Cost set forth in the Assumption and Assignment Notice and the Cure Schedule included therein; (b) deemed to have consented to the Debtors' assumption and assignment of such Assumed Contract; and (c) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (i) that any additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtors or the Successful Bidder or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contract.

14.     In the event that a Cure Objection is timely filed, such Cure Objection must set forth (i) the basis for the objection set forth therein, (ii) with specificity, the amount the party asserts as the appropriate Cure Cost, and (iii) appropriate documentation in support of its proposed Cure Cost.  In the event that the Debtors and the non-debtor party to the Assumed Contract cannot consensually resolve the Cure Objection, the Purchaser, the Successful Bidder or any other assignee will segregate any disputed Cure Costs pending the resolution of any such disputes by this Court or mutual agreement of the parties.

15.     Hearings on Cure Objections may be held (a) at the Sale Hearing or (b) on such other date as this Court may designate, provided that if the subject Assumed Contract is assumed and assigned, the Cure Cost asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the Successful

---

[4]  The Purchaser will provide the non-Debtor parties to the Assumed Contracts with financial information upon

Bidder or any other assignee pending further order of this Court or mutual agreement of the parties.

16.    The decision to assume and assign Assumed Contracts is subject to Court approval and consummation of the Sale.  Absent consummation of the Sale, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

17.    Except to the extent otherwise provided in the Asset Purchase Agreement or the purchase and sale agreement with the Successful Bidder, subject to any Cure Cost payments, the assignee of any Assumed Contracts will not be subject to any liability to the non-debtor counterparty to the Assumed Contracts that accrued or arose before the closing date of the Sale and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

18.    Objections, if any, to the approval of the Sale, as requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (Eastern Time) on March 18, 2016 and (d) be served so as to be received no later than 4:00 p.m. (Eastern Time) on the same day upon the Bidding Notice Parties; provided, however, to the extent that the Purchaser is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Assumed Contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such Assumed Contracts shall have until the Sale Hearing to raise objections to

---

written request to the Purchaser.  The Purchaser will be responsible for the Cure Costs in connection with any assumed contract.

the sufficiency of the adequate assurance of future performance, including as to the timing of adequate assurance of future performance.

19.        The Sale Hearing shall be held before this Court on March 25, 2016 at 10:30 a.m. (Eastern Time).  The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

20.        The Auction and Sale Notice, and the Assumption and Assignment Notice to be issued in connection with the Sale, substantially in the form of the notices annexed hereto are approved.

21.        This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

22.        As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

23.        All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24.        This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bidding Procedures.

Dated: _____, 2016
         Wilmington, Delaware

                                              _____
                                              The Honorable Mary F. Walrath
                                              United States Bankruptcy Judge

## EXHIBIT A TO BIDDING PROCEDURES ORDER

Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOOMERANG SYSTEMS, INC., *et al.*, | Case No. 15-11729 (MFW) |
| Debtors.[1] | Jointly Administered |

**BIDDING PROCEDURES**

The above-captioned Debtors and debtor-in-possession (the "Debtors") filed a chapter 11 case pending in the Bankruptcy Court[2] under Case No. 15-11729 (MFW).  By motion dated January 20, 2016 (the "Motion"), the official committee of unsecured creditors (the "Committee"),[3] along with the Debtors, sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures"), through which the Committee, in its sole discretion after consultation with the Debtors, will determine the highest, best or otherwise financially superior offer for substantially all of Debtors' assets (the "Acquired Assets").  On _____, 2016, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bidding Procedures.

On March 25, 2016 at 10:30 a.m. (Eastern), as further described below and in the Motion and Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Joint Movants shall seek entry of the order (the "Sale Order") authorizing and approving the sale of the Acquired Assets (the "Proposed Sale") to the Purchaser (as defined below) or to one or more other Qualified Bidders (defined below) that the Committee, in its sole discretion, determine to have made the highest, best or otherwise financially superior offer.

*Agreement*

The Debtors are currently negotiating the terms on an asset purchase agreement (the "Agreement") with Game Over Technology, Inc., individually and as agent (the "Purchaser"), pursuant to which the Purchaser proposes to acquire the Acquired Assets.  Pursuant to the Agreement, the Purchaser would credit bid, under section 363(k) of the Bankruptcy Code, on

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address of each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New Jersey 07932.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement (defined below).

[3] Any actions required to be taken by the Committee shall be performed through its retained professionals. Specifically, Stanley W. Mastil of Gavin/Solmonese, LLC shall perform the Committee's duties herein.

account of the full amount of the obligations owed to the Purchaser under the DIP Credit Agreement, as Amended. The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

*Assets for Sale*

The Debtors are offering for sale in one or more transactions all or substantially all of their assets. The assets for sale do not include the Excluded Assets (if any). Any Potential Bidder (as defined below) may submit an offer for one or more specific Acquired Assets; provided, however, that in the event that an offer is submitted for the purchase of more than one Acquired Asset, the Potential Bidder must allocate the consideration set forth in the Potential Bid as set forth below.

*Participation Requirements*

To participate in the bidding process or to otherwise be considered for any purpose hereunder, a person interested in all or portions of the Acquired Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Committee through its professionals, and Debtors, through their counsel, the following:

- *Confidentiality Agreement.* An executed confidentiality agreement in form and substance acceptable to the Committee, the Debtors and each of their respective counsel;

- *Identification of Potential Bidder.* Unless: (i) the Committee, in its sole discretion, agrees to waive this requirement; or (ii) the Potential Bidder is a publicly-traded company, identification of the Potential Bidder and any individuals who are officers, directors, members, shareholders, or otherwise insiders (as defined in section 101(31) of the Bankruptcy Code) (collectively, "Principals"). In the event that the Potential Bidder or any of its Principals is another entity, or is owned, controlled by, or affiliated (as defined by section 101(2) of the Bankruptcy Code) with another entity, the Potential Bidder must disclose every Principal and/or insider of that entity, and such disclosures must be made until all Principals and insiders are disclosed as natural persons (without any entity names). The disclosures set forth herein are ongoing in nature, and the Potential Bidder is required to update the disclosures to reflect any changes. Failure to provide the proper Bidder Identification set forth herein, to the satisfaction of the Committee, in its sole discretion, may disqualify a Potential Bidder from participation in the Auction and sale process;[4] and

---

[4] An interested party need not be a Qualified Bidder to access the "Data Room", but must submit the confidentiality agreement and must comply with the identification requirements.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or, at the Committee's sole discretion, combination of Potential Bidders whose bids for the assets of the Debtors do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a) and (b) below, and that the Committee in its discretion and with assistance from its advisors determine is reasonably likely to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

a.   *Corporate Authority*.  Within ten (10) days prior to the Bid Deadline (defined below), written evidence of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence reasonably acceptable to the Committee of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder; and

b.   *Proof of Financial Ability to Perform*.  Within ten (10) days prior to the Bid Deadline, written evidence that the Committee reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction.  Such information should include, *inter alia*, the following:  (i) the Potential Bidder's current financial statements (audited if they exist); (ii) contact names and numbers for verification of financing sources; (iii) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction (including disclosure of the source of any such financing, as required by the *Identification of Potential Bidder* subsection of the *Participation Requirements* of these Bidding Procedures (unless all financing is being provided by a traditional lending institution, in the Committee's discretion; and (iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Committee demonstrating that such Potential Bidder has the ability to close the contemplated transaction; provided, however, that the Committee shall determine, in its reasonable discretion, in consultation with the Debtors and their advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

Upon the receipt from a Potential Bidder of the information required under subparagraphs above, the Committee, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.  The Purchaser shall be deemed a Qualified Bidder.

*Access to Due Diligence Materials*

After entry of the Bidding Procedures Order, only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information.   If the Committee determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate.   The Committee's professionals will coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.   The Joint Movants shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined).   The Joint Movants are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Acquired Assets.

If the Joint Movants furnish any information related to the Debtors not theretofore given to Purchasers, then the Joint Movants shall make such information available to Purchaser and each Qualified Bidder by posting such information in the "Data Room" utilized for this transaction.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Committee or its advisors regarding such Bidder and its contemplated transaction.   Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Committee to determine that the Potential Bidder is not a Qualified Bidder.   Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Committee to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## Bidding Process

The Committee and its advisors, upon consultation with the Debtors, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions, above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Acquired Assets (collectively, the "Bidding Process").   The Committee shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be March 21, 2016, at 4:00 p.m. (Eastern Time) (**the "Bid Deadline"**).**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "<u>Bid</u>") shall deliver written copies of its cash bid to the Committee, through its counsel, prior to the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Committee to satisfy each of the following conditions:

1. <u>Good Faith Deposit</u>.  The Potential Purchaser is not required to submit a good faith deposit; however, any Qualified Bidder (as defined in the Bidding Procedures) wishing to bid for the Acquired Assets must submit a good faith deposit equal to 10% of the cash consideration set forth in the Qualified Bid.  The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing.  Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors in a segregated account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Joint Movants shall be entitled to retain the Good Faith Deposit as part of the damages resulting from the breach or failure to perform by the Successful Bidder.

2. <u>Minimum Overbid</u>.  The consideration proposed by the Bid can include only cash.  The aggregate consideration must equal or exceed the sum of the Purchase Price plus $100,000.

3. <u>Irrevocable</u>.  A Bid must be irrevocable until two (2) business days after the Acquired Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "<u>Termination Date</u>").

4. <u>The Same or Better Terms</u>:  The Bid must be on terms that, in the Committees' business judgment, are substantially the same or better than the terms of the Agreement.  A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "<u>Contemplated Transaction Documents</u>").  A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price).  The Contemplated Transaction Documents must include a commitment to close by the Termination Date.  A Bid may propose a contemplated transaction involving all of the Acquired Assets, or any individual asset.  The Committee will consider proposals for less than substantially all the Acquired Assets, provided that the Committee may evaluate all Bids, in its sole discretion, to determine whether such Bid maximizes the value of the Debtors' estates as a whole.

5. <u>Allocation of Purchase Price</u>:  Any Bid that contemplates the purchase of more than one

asset shall provide an allocation of the total consideration by the following asset types: (i) "hard" assets and intellectual property; (ii) executory contracts and/or unexpired leases (with a specific allocation of consideration per contract or lease); (iii) litigation claims (with a specific allocation for each such cause of action or litigation claim to be purchased or released); (iv) other.  The Committee, through its professionals, shall assist the Potential Bidders in good faith efforts to comply with this allocation requirement.

6. <u>Multiple Bids</u>:  As set forth above, the Committee, in its sole discretion, may determine to consider numerous non-overlapping Bids in conjunction with one another as one Bid subject to acceptance as the highest and best offer (as set forth below).  In such circumstance, an increase in any of the component Bids shall be considered an increase in the aggregate consideration provided by the consolidated Bid, and the aggregate consideration shall be subject to higher and better offers, pursuant to the procedures set forth below.

7. <u>Contingencies</u>:  A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

8. <u>Financing Sources</u>:  A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Committee with appropriate contact information for such financing sources, and all disclosures for such financing sources set forth above.  The Bid must also contain a written authorization for the Committee—through its professionals—to have direct contact with any financing source with regard to the Bid and the financing to be provided.

9. <u>No Fees Payable to Qualified Bidder</u>:  A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Committee believes, in its reasonable discretion, that such bid would be consummated if selected as the Successful Bid.  For purposes hereof, the Agreement shall constitute a Qualified Bid.

In the event that any Potential Bidder is determined by the Committee not to be a Qualified Bidder, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon (if any) within three (3) business days after that determination.

## **Auction**

Only if a Qualified Bid (other than Purchaser's) is received by the Bid Deadline, shall the Committee conduct an auction (the "<u>Auction</u>") to determine the highest and best bid with respect to the Acquired Assets.  The Committee shall provide Purchaser and all Qualified Bidders with

copies of all Qualified Bids at least twenty-four (24) hours prior to any Auction. The Auction shall commence on March 23, 2016 at 10:00 a.m. at the offices of Gavin/Solmonese, LLC, 919 North Market Street, Suite 600, Wilmington, Delaware 19801, and any changes to the time and location of the Auction will either be filed with the Court or announced at the Auction.

At or prior to the commencement of the Auction, the Committee will notify all Qualified Bidders of (i) the highest, best and otherwise financially superior Qualified Bid, as determined in the Committee's discretion (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (if Purchasers' Qualified Bid constitutes the Baseline Bid then the Expense Reimbursement shall be added to the Qualified Bid for purposes of the Auction).

If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Purchaser will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the Sale Hearing, the Joint Movants will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

1.     *Participation at the Auction*

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders and the Committee shall be permitted to participate. Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the Auction or the Proposed Sale.

During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $100,000. Other than otherwise set forth herein, the Committee may conduct the Auction in the manner they determine will result in the highest, best or otherwise financially superior offer for the Acquired Assets.

2.     *The Committee Shall Conduct the Auction*

The Committee and its professionals shall direct and preside over the Auction. At the start of the Auction the Committee shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Committee reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (A) the amount and nature of the consideration; (B) the proposed assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents, and (H) the net after-tax consideration to be received by the Debtors' estate (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully

disclosed to all other Qualified Bidders.  The Committee shall maintain a record of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

      *3.       Terms of Overbids*

An "Overbid" is any bid made at the Auction subsequent to the Joint Movants' announcement of the Baseline Bid.  To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

    i.  *Minimum Overbid Increment:*  Any Overbid after the Baseline Bid shall be made in increments of at least $50,000.  Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash.  The Committee, in its sole discretion, reserves the right to: (i) accept an Overbid that is less than the Highest and Best Bid plus the Minimum Overbid Increment; and/or (ii) to request the submission of a written "highest and best offer" from all Qualified Bidders, which offer may exceed the highest bid by less than the Minimum Overbid Increment.

    ii.  *Remaining Terms are the Same as for Qualified Bids:*  Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply.  Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Committee accepts a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).  To the extent not previously provided (which shall be determined by the Committee), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Committee) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

    iii. *Announcing Overbids.*  The Committee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estate based on, *inter alia*, the Bid Assessment Criteria.

    iv. *Consideration of Overbids*  The Committee reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Committee and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Committee with such additional evidence as the Committee in its reasonable business judgment may require, that the Qualified Bidder (other than the Purchaser) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

      *4.       Additional Procedures*

The Committee may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion, will promote the goals of the Auction and that is not inconsistent with any of the provisions of the Bidding Procedures Order.  All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be

entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the Principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

5.    *Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

6.    *Closing the Auction*

Upon conclusion of the bidding, the Auction shall be closed, and the Committee shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest, best or otherwise financially superior offer for the Acquired Assets (the "Successful Bid") and the entity or entities submitting such Successful Bid, the "Successful Bidder"), which highest, best or otherwise financially superior offer will provide the greatest amount of net value, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination (the "Back-up Bidder"). If the Purchaser's final bid is deemed to be highest and best at the conclusion of the Auction, Purchaser will be the Successful Bidder, and such bid, the Successful Bid. If the Purchaser is not the Successful Bidder, the Purchaser's final bid shall only be a binding Back-up Bid if the Purchaser submits a bid at the Auction that is higher and better than their bid as set forth in the Agreement. Prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

## **Acceptance of Successful Bid**

The Debtors shall sell the Acquired Assets to the Successful Bidder, as determined by the Committee, upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Committee's acceptance of the bid. The Committee and the Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Committee's selection of the Successful Bidder (including the assignment of any of such objector's Assumed Executory Contract thereto, provided, however, that any objection to such assignment on the basis of the Cure Amount must be made and/or reserved as set forth in the order approving these Bidding Procedures).

## Credit Bidding

The Purchaser can credit bid all of its claims to the full extent permitted by section 363(k) of the Bankruptcy Code.

## Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

## Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction Date or on such date as may be established by the Bankruptcy Court.  Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fail to consummate an approved sale within fourteen (14) days after entry of an Order approving the Sale, the Committee shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Committee shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder shall be applied to the purchase price of such transaction at Closing.  Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors in a segregated account until five (5) days after Closing of the transactions contemplated by the Successful Bidder, and thereafter returned to the respective bidders.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Committee shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

## Failure to Consummate Sale

If the Auction is conducted, the Back-up Bidder shall keep the Back-up Bid open and irrevocable until 5:00 p.m. (ET) on the first business day following the Closing of the Sale with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder's bid will be deemed to be the new Successful Bid, and the Committee will be authorized,

but not required, to consummate the sale with the Back-up Bidder without further order of the Court upon at least 24 hours' notice to the Notice Parties.  In such case, the Successful Bidder's deposit shall be forfeited to the Committee as damages and the Committee specifically reserves all right to seek all available damages from the defaulting Successful Bidder.

### Modifications

The Bidding Procedures may not be modified except with the express written consent of the Committee and the Purchaser.

The Committee, may (a) determine, which Qualified Bid, if any, is the highest, best or otherwise financially superior offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Debtor, its estate and creditors.

At or before the Sale Hearing, the Committee may impose such other terms and conditions as the Committee may determine to be in the best interest of the Debtors' estate, its creditors and other parties in interest.

## EXHIBIT B TO BIDDING PROCEDURES ORDER

Auction and Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOOMERANG SYSTEMS, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 15-11729 (MFW)<br><br>Jointly Administered |

## AUCTION AND SALE NOTICE

**PLEASE TAKE NOTICE** that on January 20, 2016, the official committee of unsecured creditors (the "Committee"), along with above-captioned debtors and debtors in possession (the "Debtors"), (collectively the "Joint Movants") filed the Joint Motion for an Order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a)(i) approving certain bidding procedures (the "Bidding Procedures") in connection with the Debtors' sale (the "Sale") of certain of its assets (the "Acquired Assets"); (ii) approving the form of the asset purchase agreement (the "Asset Purchase Agreement") in connection with the Sale,; (iii) scheduling an auction (the "Auction") in connection with, and hearing (the "Sale Hearing") to consider approval of, the Sale; (iv) approving certain procedures (the "Cure Procedures") related to the assumption of certain executory contracts and unexpired leases; (v) approving the form and manner of notice with respect to the foregoing; and (vi) granting certain related relief; and (b)(i) authorizing the Sale pursuant to the Asset Purchase Agreement free and clear of any and all liens, claims, encumbrances and other interests to the Purchaser or the party otherwise submitting the highest and best offer at the Auction (the "Successful Bidder"); (ii) approving the assumption and assignment of the executory contracts and unexpired leases (collectively, the "Assumed Contracts") related thereto; and (iii) granting certain relief in connection therewith (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). All parties that may be interested in submitting a bid for the Acquired Assets or any portion thereof or taking part in the Auction (as defined below) must read carefully the Bid Procedures as outlined in the Bidding Procedures Order (as defined below).

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address of each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New Jersey 07932.

[2] All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion.

Only those parties that submit Qualified Bids may participate in the Auction (as defined below); if you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge at the Debtors' dedicated website at www.gcginc.com/cases/bmr.

A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to: (i) counsel for each of the Joint Movants and (ii) the Office of the United States Trustee for the District of Delaware, Attn: Hannah McCollum, Esq., 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801  (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on March 21, 2016 (the "Bid Deadline") and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

If a Qualified Bid other than the Purchaser's Bid is timely received, the Auction will be held on March 23, 2016 at 10:00 a.m. (Eastern Time), and the Debtor shall notify the Bidding Notice Parties and all Qualified Bidders which have submitted a Qualified Bid and expressed their intent to participate in the Auction as to the time and place of the Auction designated by the Joint Movants not later than 4:00 p.m. (Eastern Time) on March 22, 2016. If however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Purchaser will be deemed the Successful Bidder, the Asset Purchase Agreement will be the Successful Bid, and, at the Sale Hearing scheduled for March 25, 2016 at 10:30 a.m. (Eastern), the Joint Movants will seek approval of and authority to consummate the transaction contemplated by the anticipated Asset Purchase Agreement.

Only a Qualified Bidder which has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders and the Joint Movants shall be permitted to participate in the Auction. The Auction will be conducted openly and all creditors will be permitted to attend. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall begin initially with the highest Baseline Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, and continue in minimum increments of at least $100,000. The highest, best or otherwise financially superior offer for the Acquired Assets shall be determined by the Committee in its discretion or as determined by the Bankruptcy Court in the event of a dispute.

At the Sale Hearing, the Joint Movants will present the Successful Bid to the Bankruptcy Court for approval. The Joint Movants will sell the Acquired Assets or any portion thereof to the Successful Bidder or to the Purchaser in accordance with the Asset Purchase Agreement if a higher or otherwise better Qualified Bid is not received and accepted as the Successful Bid. If the Successful Bidder fails to consummate an approved Sale because of a breach or a failure to perform on the part of such Successful Bidder, the Committee shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Committee shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

If you seek to object to the Sale of the Acquired Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order.  Such Objections must be filed with the Bankruptcy Court and served on the Bidding Notice Parties no later than 4:00 p.m. (Eastern Time) on March 18, 2016. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection.

Dated:  January ___, 2016

| | |
|---|---|
| HOGAN♦MCDANIEL | A. M. SACCULLO LEGAL, LLC |
| _____ <br> Garvan F. McDaniel (DE Bar No. 4167) <br> 1311 Delaware Avenue <br> Wilmington, DE 19806 <br> Tel:  (302) 656-7540 <br> Fax: (302) 656-7599 <br> - and - <br> SULLIVAN & WORCESTER LLP | _____ <br> Anthony M. Saccullo (Bar No. 4141) <br> Thomas H. Kovach (Bar No. 3964) <br> 27 Crimson King Drive <br> Bear, Delaware 19701 <br> (302) 836-8877 <br> (302) 836-8787 (facsimile) <br> ams@saccullolegal.com <br> Kovach@saccullolegal.com |
| _____ <br> Jeffrey R. Gleit (admitted *pro hac vice*) <br> 1633 Broadway <br> New York, NY  10019 <br> Tel: 212-660-3043 <br> Fax: 212-660-3001 <br> *Counsel for the* <br> *Debtors and Debtors in Possession* | *Counsel to the Official Committee of Unsecured Creditors* |

3

**<u>EXHIBIT _C TO BIDDING PROCEDURES ORDER</u>**

Assumption and Assignment Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOOMERANG SYSTEMS, INC., et al., | Case No. 15-11729 (MFW) |
| Debtors.[1] | Jointly Administered |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
PROPOSED SALE OF DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that on January 20, 2016, the official committee of unsecured creditors (the "Committee"), along with above-captioned debtors and debtors in possession (the "Debtors"), (collectively the "Joint Movants") filed the Joint Motion for an Order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a)(i) approving certain bidding procedures (the "Bidding Procedures") in connection with the Debtors' sale (the "Sale") of certain of its assets (the "Acquired Assets"); (ii) approving the form of the asset purchase agreement (the "Asset Purchase Agreement") in connection with the Sale,; (iii) scheduling an auction (the "Auction") in connection with, and hearing (the "Sale Hearing") to consider approval of, the Sale; (iv) approving certain procedures (the "Cure Procedures") related to the assumption of certain executory contracts and unexpired leases; (v) approving the form and manner of notice with respect to the foregoing; and (vi) granting certain related relief; and (b)(i) authorizing the Sale pursuant to the Asset Purchase Agreement free and clear of any and all liens, claims, encumbrances and other interests to the Purchaser or the party otherwise submitting the highest and best offer at the Auction (the "Successful Bidder"); (ii) approving the assumption and assignment of the executory contracts and unexpired leases (collectively, the "Assumed Contracts") related thereto; and (iii) granting certain relief in connection therewith (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). All parties that may be interested in submitting a bid for the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address of each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New Jersey 07932.

[2] All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion.

Acquired Assets or any portion thereof or taking part in the Auction (as defined below) must read carefully the Bid Procedures as outlined in the Bidding Procedures Order (as defined below).

At a hearing held before the Bankruptcy Court on January 28, 2016, the Bankruptcy Court entered an Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order").   Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge at the Debtors' dedicated website at www.gcginc.com/cases/bmr.  Pursuant to the Bidding Procedures Order, on March 25, 2016 at 10:30 a.m. (Eastern Time), the Bankruptcy Court will hold a hearing (the "Sale Hearing") to consider the Sale.

Pursuant to the Bid Procedures Motion, the Debtor may seek to assume and assign to the Purchaser or the Successful Bidder certain of their unexpired leases, license agreements and executory contracts (collectively, the "Assumed Contracts") free and clear of all liens, claims, encumbrances and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "Cure Costs").   The Assumed Contracts that the Debtor may, but are not required, to assume and assign, and the corresponding Cure Costs are listed on the attached Exhibit A (the "Cure Schedule").

Pursuant to the Bidding Procedures Order, any objection (a "Cure Objection") to the assumption and assignment by the Debtor of the Assumed Contracts and the corresponding Cure Costs must be (a) in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, (c) filed with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801 on or before 4:00 p.m. (Eastern Time) on March 18, 2016 (the "Cure Objection Deadline") and (d) served so as to be received no later than 4:00 p.m. (Eastern Time) on the same day upon:  (i) counsel for each of the Joint Movants, (ii) counsel to the Proposed Purchaser; and (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; provided, however, that in the event the Auction results in a Successful Bidder other than the Purchaser, the Debtor shall file a notice identifying such Successful Bidder, and serve such notice upon each party identified in the Cure Schedule. The deadline for objecting to the assignment of the Assumed Contracts to such Successful Bidder on the basis of adequate assurance of future performance will be the commencement of the Sale Hearing.  Any such objection shall set forth a specific default in any Assumed Contract and claim a specific monetary amount that differs from the Cure Cost, if any, specified by the Debtor in the Cure Schedule.

Unless the non-Debtor party to an Assumed Contract timely files and serves a Cure Objection by the Cure Objection Deadline (or in the event that the Purchaser is not the Successful Bidder, at or prior to the Sale Hearing), such non-Debtor party to the Assumed Contract shall be:  (a) forever barred from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtor and the Successful Bidder will be entitled to rely solely upon the Cure Cost set forth in the Cure Schedule; (b) deemed to have consented to the Debtors' assumption and assignment of such Assumed Contract; and (c) forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder (i) that any

additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtor or the Successful Bidder, or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contract.

The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for said hearing.

Dated:  January ___, 2016

| | |
|---|---|
| HOGAN♦MCDANIEL<br><br>_____<br>Garvan F. McDaniel (DE Bar No. 4167)<br>1311 Delaware Avenue<br>Wilmington, DE 19806<br>Tel:  (302) 656-7540<br>Fax: (302) 656-7599<br>- and -<br>SULLIVAN & WORCESTER LLP<br><br>_____<br>Jeffrey R. Gleit (admitted *pro hac vice*)<br>1633 Broadway<br>New York, NY   10019<br>Tel: 212-660-3043<br>Fax: 212-660-3001<br>*Counsel for the*<br>*Debtors and Debtors in Possession* | A. M. SACCULLO LEGAL, LLC<br><br>_____<br>Anthony M. Saccullo (Bar No. 4141)<br>Thomas H. Kovach (Bar No. 3964)<br>27 Crimson King Drive<br>Bear, Delaware 19701<br>(302) 836-8877<br>(302) 836-8787 (facsimile)<br>ams@saccullolegal.com<br>Kovach@saccullolegal.com<br><br>*Counsel to the Official Committee of*<br>*Unsecured Creditors* |

DB02:8164265.2                                                                                                    068210.1001

789768-3